Please the court. My name is Tim Callahan and I represent Appellant LSI Lowery Systems, Inc. LSI has adopted and concur with the briefs filed by Appellant Hodell-Natco Industries and therefore I'm just going to take a several couple minutes just to kind of go over some factual issues and let Mr. Lambert kind of discuss the substance of the legal argument. This case all arises out of the underlying action is a LSI entering into a contract with Hodell-Natco to implement a software program designed and constructed by SAP called Business One and they were also to integrate it with an add-on program called Inflight Enterprises. And in March 2007, SAP's Business One software was ready to launch at Hodell-Natco and instantly they started having performance problems. Hodell-Natco contacted LSI and they began to work with SAP as well to try to resolve the performance problems. Now admittedly there was many communications back and forth between Hodell and LSI as well as LSI and SAP regarding these performance problems and trying to get the software to function properly. And as well as Philadelphia Consolidated will probably reference and they've said in their brief, there was a lot of discussions about potential lawsuits. At all times, LSI only believed any legal claim they might have against them as a breach of contract claim. And that's evidenced by a July 24, 2007 letter from Hodell-Natco's attorney the first time a lawyer got involved. And the lawyer wrote a letter to LSI and stated that LSI was potentially in material default of the contract. The reason why that's important is because under the Philadelphia Consolidated insurance policies, LSI had to give notice of a covered claim or potentially covered claim. And breach of contract under the policies were not a covered claim. The only covered claims under the policies were negligence or negligent misrepresentation or at least the two claims that were raised in the subsequent complaint. Are you and your clients still claiming coverage under 2007 policy or only? Okay, and how do you do that because the claim wasn't made within the policy period? Because there was no, the claim was made in 2008, so we're claiming covered under 2008 policy. Okay, so that's what we should focus on, 2008 policy? Yes, because 2007 they had no knowledge of any claim of negligence or negligent misrepresentation which were the only claims covered under the policies. And those were not raised and first notified and provided notice to LSI until December of 2008 when Hodell-Natco filed their complaint in the District Court of, Federal U.S. District Court for Ohio. Yeah. Okay. Your time's expired. Okay. Thank you, Your Honor. Morning, Mr. Lambert. Morning, Your Honor. May it please the court, my name is Wes Lambert. I represent the appellant Hodell-Natco. I just want to clarify something from a question the court just raised. Our primary position in this appeal is that coverage is proper under the 2008 policy because there was no notice, there was no claim raised in 2007, nor was there notice of a potential claim in 2007. So is it your position that there have to be some kind of magic words used to let you know a claim's potential in order to notify the company? I don't know about magic words, but I think in fairness to insured such as LSI and claimants, or people that are bringing claims against insureds like my client, there needs to be some kind of knowledge by the insured as to- Reading the correspondence, it seems like the company is letting you know they are experiencing serious consequences to the product that you've supplied them. That they're losing money, they're having frustration issues, they're mentioning bringing in their legal team, they're talking about legal action, and though it may not have been abundantly clear the basis for the legal claim, in terms of what theory might be used, it seems like it would have been reasonable to think that that would include claims that would fit the coverage that was purchased. Well, I guess that's why it's difficult to resolve a case like this one on summary judgment, because LSI is claiming, listen, we thought, and I think that's objectively reasonable as well, we thought that Hodel was upset with our performance under the development agreement, which is a contract and it's borne out by the letter that was eventually sent by Hodel's lawyer saying we believe that you're in breach of this contract. And that is not covered under the policy. PIC has sent a reservation of rights letter saying that's not going to be covered under the policy. Had LSI tendered that to its carrier at that point in time, that would not have been covered. And so- But this is a professional liability claim. Correct. Or liability policy, I'm sorry. And why is it not reasonable to believe under the policy terms that the wrongful act could include negligence or something else other than a breach of contract? Because a wrongful act in the policy is defined as a negligent act or omission, and this is why this case is so different than the cases relied upon by the district court and cited by PIC is, and I referred to it in the district court as a triggering event, and the district court thought I was urging the application of a new legal standard. I'm not. What happened in those cases is there was a distinct event that occurred that gave rise to a negligence claim that the insurer knew had given rise to a negligence claim or a claim under the policy. For example, the Witmer decision was the failure of an attorney to file an answer and an assertion of negligence by the client. Clear negligence, clear allegation of negligence. In the Brentwood case, it was the filing of an EEOC claim, clearly covered under the policy. Here, we're talking about implementation of several pieces of software. Why is it reasonable to assume that there'd be a claim for a negligent implementation? Because. In particular, I think their first letter says, we'll pursue all legal and equitable remedies available. Remedies, but not necessarily claims. Well, you're splitting hairs. That sounds like, I mean, typical plaintiff's lawyer is going to sue under every theory and seek every remedy that they possibly can. But that doesn't mean that a small business owner, such as LSI, necessarily knows that. What the factual record in front of them. They also say, we're turning it over to our lawyers. Right. Right. But that doesn't. Let's go back. Why is it not reasonable to anticipate a negligence claim for negligent implementation of the software program? Because I don't think, prior to the filing of the complaint, at least a year after, a year and a half after this discussion started, I don't think there was any discussion of whether LSI had been negligent in actually recommending the software or the way that they implemented it or any of those facts. Like Judge Smith says, do you have to ask magical words? I mean, obviously, a breach of contract claim, your remedies are limited. Negligence claim, you can get broader damages. So, and you yourself said, well, these are business people and they're not using the same terminology. Well, why is it not reasonable that what they really were talking about, you're breaching the contract and you're breaching it because you're negligent in the way you're setting it up and you're implementing it? Well, that's an interesting question. And we had a big fight with LSI's co-defendant, SAP, about whether we could actually assert negligence claims, ordinary negligence or negligent misrepresentation claims when there's a breach of contract claim and you have to prove that they're very distinct causes of action. So just merely by asserting a contract claim, by no means can you also assert a negligence claim. And it's actually very difficult to do so. And LSI didn't assert that defense in motion practice, but SAP did. So they're very distinct causes of action. I think that the- Sure, one's contract, one's tort. Right. And various different things arise. But it's probably not that analogous, but it is a professional liability for a lawyer and a malpractice. But you can also have a breach of contract claim and a negligence claim for malpractice. The case law that I've seen holds that, for example, when a lawyer's alleged to have done something wrong, it's typically a negligence malpractice claim, whether it's pled as a contract claim or something like that. It's a different scenario than when it's a small business owner. You could have just a legitimate, straight up, breach of contract claim against a business. And going back to the original question about whether you need magical- It's unique. This is a small business that's providing a specialized product, a specialized consultation and recommendation of a product. And even the implementation of it. Correct. But again, the standard that I'm urging, and actually when you asked me about magical words, the McMillan Engineering versus Travelers case is pretty closely analogous to this case, where an architectural firm had been hired by an owner to design, I believe it was the grading of a slope. The slope failed. The Pennsylvania Department of Transportation was brought in. All kinds of allegations were being made against the owner, who then made allegations against the insured, the architect. And they knew that something had gone wrong. They knew everybody was unhappy. They were asserting a claim. I think they even asserted claims under certain statutes. But the district court held, as to the question of whether there had been a claim asserted under that policy, the district court held, being financially responsible for a situation does not necessitate an initial finding of negligence. Such a finding can arise in a number of ways. Simply because one is considered responsible for something, does not mean that his or her responsibility was brought about due to negligence or wrongdoing. This has been curious. It's a little bit off subject, what you're saying. But apparently, somebody from HODL asked them, my quote here, my notes, don't you carry professional liability insurance? And I think that was asked fairly early on. Isn't that some indication that there's a potential claim based on a professional liability policy? And maybe your answer is the timing of it, because I don't remember when it was. Why isn't that great reason to believe there's going to be a professional liability claim? Again, that might be something that could be resolved by the trier of fact. I don't know exactly. I wasn't involved in that conversation, nor was anybody else in this room. So I'm not entirely sure what that referred to. Obviously, it was an inquiry of whether they had insurance. But we, I don't know if this is in the record, but we inquired as to whether they had insurance before we even started doing business with them. But going back to the McMillan case, I mean, the McMillan court required that the insured have noticed that negligence was being asserted against it. And the facts are very similar. I'm running into my rebuttal time. But I would urge that the court adopt a similar standard in this case. Okay. Thank you, Mr. Lambert. Good morning, Ms. Young. Good morning, Your Honor. May it please the court. May it proceed. So I'm going to, so I don't have to look up at the microphone there. Just to answer really quickly your question on the timing issue regarding that statement about, don't you have professional liability insurance? I was trying to look up to give you a month, whether it was earlier or later. I can tell you definitively that it was before the 2008 policy incepted. Because that's, you know, in the chronology that I have is- Say that again. I may have missed it. Well, wait a minute. Was it during the 2008 policy period? No, it was before. Before the 2008 policy. Right. The year before. Right. And so I can't give you a month because I wasn't quick enough with my eyes. I mean, that's some evidence that they were talking about it. Right. And that's, you know, in this case, I have kind of an embarrassment of riches as far as the evidence on our side goes. So I don't want to walk you through all of the facts that, you know, support the fact that LSI here, at minimum, had knowledge that there were circumstances that might lead to a claim. But I will address one quick thing. My opposing counsel says that on July 24, 2007, there was a letter issued saying that they were in material breach of the contract. And so he says, at that point, they put up their hands and think that there must be just contract claims. Well, in fact, on July 27, just three days later, there was a correspondence specifically that you referenced saying that they're going to assert all legal remedies. I think that when you look at this, the fact scenario here, there's simply no objective way that this company could claim that they didn't know that there was a claim coming, that they thought that the claim was going to be somehow limited to the contract. Nothing in the evidence indicates that they were limiting it to a contract. You know, they don't ever say that to LSI. LSI never says that internally amongst each other. LSI never says that to SAP. The first time that we heard that statement was actually during the litigation in the declaratory judgment stage, not even in the underlying litigation or the documents that I was provided from the underlying litigation was that referenced. And so I think that when you look realistically at the statements that they're making, it's, well, this was a small business owner, how are they supposed to know what kind of claims were going to be brought? They don't dispute that, in fact, there were other claims that could be brought. They're just saying they didn't know or that they don't dispute that the acts happened. The acts that later would have been alleged as the negligent acts, they don't say that those didn't happen or that they didn't have knowledge that those happened. Their sole claim is that they didn't know what allegations the plaintiff were going to bring when they actually filed suit. Well, the answer to that is, if you're a small business owner, turn it over to your insurance company. Let your insurance company sort through those facts. You don't take on the risk of trying to determine whether or not something's going to be covered or not covered. You simply give them notice of it. Now, they've said, well, we can't give them notice of everything that happens. Every time a customer complains, that would be impracticable. Well, here, that's not what we're talking about. We're talking about, I think we cited you in excess of 20 individual instances in which there were significant complaints made. They were claiming hundreds of thousands of dollars in lost profits every month. LSI put all of their resources during, before our policy began, all of their resources were being devoted to try to fix the problems with HODL. They acknowledged that if they couldn't fix these problems, that LSI was likely to go bankrupt. At what point would you say they should have, they knew, they had reason to believe there was a claim? Because there is a bit of a difference between this kind of situation and the attorney malpractice for failure to file a response or an appeal. Right, this idea of there being a distinct trigger is, I think, what you're talking about. And there is a difference in this case where the wrongful act is actually an ongoing wrongful act. And so, number one, I honestly believe that there was a triggering event. In March 2007, when they rolled this out and it crashed. And they immediately had a letter from HODL to LSI before, by the way, the 2007 policy ever began. They had a letter from them saying, either fix this or we're going to sue you. I mean, and so I don't know how you get around the fact that, yes, is it continuing to get worse? Yes, is this an ongoing wrongful act? Yes, does that mean that there was no trigger? I don't think that that's true. I think there was an initial trigger when they rolled out the software and it crashed. And they knew immediately, and within a month, that it was costing their client hundreds of thousands of dollars. And I think at that point, what they should have done is reported to the insurance company that they had in 2006. Obviously, we're not talking calendar years, but in their 2006 policy, they certainly should have informed Philadelphia before they even applied for the 2000. And should have continued to keep them informed of the claim as they went along if they wanted coverage under these policies. If they didn't want coverage under the policies, they don't have to give us notice. But the clear exclusions, unambiguous exclusions in these policies provide that they have to give that kind of notice. And also, just as a side note on that distinct triggering event, if they're going to say, well, the wrongful act can't be this ongoing wrongful act, can't be this progression of the relationship downhill with HODL. Well, then I guess it's not a wrongful act as defined under the policy, in which case there's no coverage, and then they don't have to give us notice. But they've created an independent reason to deny coverage. And so here, again, even if you want to say that the distinct triggering event didn't happen in March, if you want to move it to the next month by the time that they're threatening litigation. If you want to move it to the month after that, when they tell them that they're experiencing hundreds of thousand dollars loss every month. And that they expect LSI ultimately to pay that money. When the next month, LSI says, but what about SAP? And HODL's response is, we are holding LSI responsible for this loss. And if none of those satisfy it, then take a look at the next year worth of the record in this case. In which email after email after email from HODL is explaining to them the losses. It's explaining to them that they have attorneys, that they're going to be seeking damages. And in fact, there are two distinct letters in there where we believe that a claim was actually made. Something over and above whether or not a claim might have been made. Circumstances that might lead to a claim. All during that year before our policy began, the 2008 policy began. Did that answer your question? And so, and I think that really this case is as simple as it looks. I mean, it is that here we have an undisputed record of continuous complaints from HODL to LSI. Indicating that they were going to bring a claim. The Missouri courts and the federal, both at the state and federal level, have consistently held that the subjective belief of the insured simply doesn't, is irrelevant to the analysis of whether or not they had knowledge of circumstances that might lead to a claim under this exact type of an exclusion. The argument that my opposing counsel is now making this idea of, well, they knew they were going to get sued. They just thought it was going to be a breach of contract claim, is nothing more than a refashioning of that same argument. They're still trying to argue that their subjective beliefs in looking back on the policy, back on the claim after the lawsuit was filed, that those subjective beliefs as to even more particular how the claim was going to be pled into a court. Somehow removes the objective, the need for an objective belief. Well, here, I just don't see how you come to anything other than a finding that the objective belief upholds what we're saying in the record, that with this many correspondents pointing in our direction, that there can be anything other than a finding that they had knowledge of these circumstances. And so I think that while I applaud him for his creativity in coming up with this breach of contract versus negligence claim, you're right, Judge Smith, that there just is no magic language that has to be used. And the cry of the, we're a small business, how are we to know any better? The answer is, you're not supposed to know any better, you're supposed to notify your insurance company. You're not supposed to parse it out and try to figure it out, you just pass on the claim. The other issues that my opposing counsel has raised, I think we've briefed them pretty significantly. If you don't have any questions, I can refresh your memory of what the issues are. But I don't know if you really want to have any discussion on them. Council, you're under no obligation to use all of your time. That's kind of what my thought was is, I mean, like I said, if you read our briefs, I would just continue to urge, read the record. It sounds like all of you guys have. I think that LSI and HODL very much wants to get away from this record. And I think that's the end and the beginning of it. So, without anything more, your honors, I'll sit down. Okay, thank you, Ms. Yen. Thank you. Mr. Lambert, you have about two minutes left. No, you don't get to use hers. I just want to follow up on a couple of things. It's not knowledge that the customer is dissatisfied that I believe triggers the obligation to report. It's the knowledge that there has been a negligent act committed or alleged is what I believe triggers the obligation to report under these policies under Missouri law. That's what all the cases say, knowledge of a negligent act or omission. And nobody's ever pointed to when LSI had knowledge of a negligent act or one of these policies, and that's the basic premise of my argument, is that where, unlike Whitmer, where's the knowledge that they hadn't filed an answer? Where's the knowledge that an EEOC claim had been filed, like in the Brentwood case? There's not that allegation, there's not that evidence in the record here. That's why this case is distinguishable. The McMillian case I cited, which is in Pennsylvania, but it's the exact same underlying law. It had the same factual record. There was a lot of evidence, there was a lot of emails in the record, like there is here admittedly. But none of those emails allege professional negligence against the plaintiff in that case. None of the emails here- Is it analogous to statute of limitations where you don't have to have any magical language, but the rule is that a cause of action accrues when you have sufficient knowledge of the acts. Which could give rise to the claim. No, it's- And here I would think that your clients, they knew all the facts. They knew the facts. They did not know that they were being alleged to have committed professional negligence at any time until the complaint was filed. And it's the exact same situation as in the McMillian case. When that plaintiff knew that negligence was being asserted, then they had an obligation to report it. There's nothing in the record here that brings this case within that ambit. There just is not in this record. Okay, thank you very much. We thank you for your arguments, both oral and written, and we will be back in due course. Thank you.